IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 07-cv-00754-RPM-CBS

RICHARD SIEGEL,

    Plaintiff,

v.

CENTRES, INC.,
    Defendant.
_____

FINDINGS AND CONCLUSIONS ON LIABILITY ISSUES
_____

  Richard Siegel has been a broker in the commercial real estate business for many years. Centres, Inc., a Wisconsin corporation with its principal place of business in Miami, Florida, is in the real estate development business, operating nationally, with over 30 years experience. It acquires building sites and builds business properties for specific occupants, who purchase or lease the completed development. At all relevant times Kenneth Karl has been the Chief Executive Officer and David Charlton has been the president of Centres.

  On August 12, 2004, Siegel and Centres entered into a Development Agreement to develop and construct retail development projects. Ex. 1. Siegel's obligations are detailed in Section 3 of the Agreement and include site selection, initial negotiations for acquisition, preparation of site packages, budgets and permitting. The Agreement contemplated the formation of a limited liability company, or other entity formed by Centres to acquire title to each property with Siegel as a member with a 50% interest in the company.

Pursuant to the Agreement, Siegel and Centres developed a site for retail stores in Boulder, Colorado, adjacent to a Safeway Store, and formed a limited liability company in January, 2005, with Karl, Centres and Siegel as members.  Ex. B.  That project was completed and sold at a profit in January, 2006.

By a letter, dated February 21, 2006, Centres terminated the Agreement, effective 60 days later, as permitted by Sec. 17 of the Agreement.  Ex. C.

In January, 2005, Siegel and Karl met with Jeffrey Finn, president and CEO of New America Network, Inc., (NAI) in New Jersey at the suggestion of Siegel, to discuss an alliance.  NAI is a collection of real estate brokers engaged in the acquisition of commercial and industrial real estate, world-wide.  The general terms of a potential association were memorialized by Karl in a letter to Jeff Finn, dated January 27, 2005. (Ex. 3).  Drafts of a contract were exchanged.  Edward Finn, general counsel for NAI, prepared the drafts submitted by it.  He was aware of Siegel's role in bringing the parties together and that a tripartite agreement had been discussed, but NAI did not want Siegel to be a party to the contract.

A formal agreement between NAI and Centres was signed in May, 2005. Paragraph 22 of the Alliance Agreement reads as follows:

> 22.  The parties acknowledge that they were introduced and the relationship resulting in this Alliance Agreement was originated by Richard Siegel.  Ex. 4.

On June 20, 2005, Charlton sent Siegel a letter, dated June 17, 2005, referring to a copy of the Alliance Agreement and confirming "our understanding with respect to the Siegel and Centres relationship as it relates to the NAI Agreement."  Ex. 17.  The letter

includes the following paragraph.

> When NAI and Centres enter into an NAI Opportunity (as such term is defined in the NAI Agreement), NAI (comprised of NAI Global and an NAI Member), Centres and Siegel shall create a single purpose entity (the "Opportunity Entity") in which Ken Karl owns one half (50%) of the interest in the applicable Opportunity Entity, NAI owns one quarter (25%) of the interest and, in most cases, Siegel owns one quarter (25%) of the interest. Such Opportunity Entity shall operate during the course of an NAI Opportunity as set forth in the NAI Agreement.

There is no specific definition of an "Opportunity Entity" in the Alliance Agreement, but it provides that Centres and NAI will share in "the profits of the venture which pursues the BTS opportunity, with NAI receiving twenty-five percent (25%) of the net profits of each such venture." (Ex. 4.)

Siegel signed a copy of the letter, mistakenly dating it June 19, 2005, and sent it to Centres. While the language in these two documents is not parallel, the apparent agreement is that Siegel and NAI are to share equally in the net profits of the entity formed to pursue and complete a development project presented to Centres by an NAI member and completed by Centres. This letter agreement is a valid contract between Centres and Siegel which is independent of their Development Agreement. Accordingly, Siegel earned this net profits interest in any venture completed by Centres as a result of the action of an NAI member presenting the opportunity to Centres without any additional work on that project by Siegel. The apparent improvidence of that agreement does not affect its validity.

At issue in this case are stores built by Centres for Bridgestone/Firestone (BF) resulting from an introduction made by Kevin Fitzgerald, an NAI member, of Karl to Blocha, a BF executive at a convention in Las Vegas, Nevada.

The NAI Development Agreement was terminated by Centres by a notice, sent May 4, 2006, effective June 4, 2006, in accordance with a termination clause in the contract.  Under Sec. 9 of the Alliance Agreement, NAI was entitled to receive its portion of any profit for "any projects originated with such development client during" one year after termination.  Ex. 4.  This was confirmed to apply to the B/F projects by letter agreement signed by Charlton and Ed Finn, dated May 22, 2006.  Ex. 15.

Accordingly, Siegel is entitled to his 25% share of net profits from B/F stores on projects that originated before June 4, 2007.  The parties dispute the meaning of "originated" with B/F as the development client.  A reasonable interpretation is that such a project is originated when B/F has agreed to go forward on a specific site.  Accordingly, Siegel's interest has been earned on all B/F stores on sites that were approved by B/F before June 4, 2007.  It is

ORDERED, that these findings and conclusions resolve the liability issues identified in the Final Pretrial Order entered on March 23, 2011.

DATED:   June 17th, 2011

BY THE COURT:

s/Richard P. Matsch
_____
Richard P. Matsch, Senior Judge